IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM CHAPMAN,

Petitioner,

vs.

LELAND McEWEN,[1] Warden (A), California State Prison, Calipatria,

Respondent.

No. 2:09-cv-00639-JWS

MEMORANDUM DECISION

Petitioner William Chapman, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Chapman is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Calipatria. Respondent has answered and Chapman has replied.

I. PRIOR PROCEEDINGS/BACKGROUND

Following a trial by jury, Chapman was convicted in the Sacramento County Superior Court of sexual battery of a restrained person (Cal. Penal Code § 243.4(a)); forcible oral copulation (Cal. Penal Code § 288(c)(2)), with an allegation of a kidnapping enhancement (Cal. Penal Code § 667.61(d)(2)); forcible rape (Cal. Pen. Code § 261(a)(2), with an allegation of a kidnaping enhancement (Cal. Penal Code § 667.61(d)(2)); and simple kidnapping (Cal. Penal Code § 207).[2] The trial court sentenced Chapman to state prison for six years on the oral copulation conviction plus consecutive terms of one year on the sexual battery and an indeterminate term of 25 years to life on the rape convictions. Sentence for kidnapping was stayed under Cal. Penal Code § 654. Chapman timely appeal his conviction to the California

[1] Leland McEwen, Warden (A), California State Prison, Calipatria, is substituted for Larry Small, Warden, California State Prison, Calipatria. Fed. R. Civ. P. 25(d).

[2] Chapman was acquitted of similar charges involving a second victim.

Court of Appeal, Third District, which affirmed his conviction and sentence in an unpublished, reasoned decision.[3] The California Supreme Court summarily denied review without opinion or citation to authority on April 25, 2007.

On December 8, 2006, Chapman filed a petition for habeas relief in the California Court of Appeal, Third Appellate District, which was denied on December 15, 2006, noting "an appeal is pending."[4] On February 20, 2007, Chapman filed a petition for habeas corpus relief in the California Supreme Court, which was summarily denied by that court without opinion or citation to authority on August 29, 2007.[5] On November 14, 2007, Chapman filed a petition for habeas corpus relief in the Sacramento County Superior Court, which was denied by that court in a reasoned decision on January 2, 2008.[6] Chapman then filed a new petition for habeas relief in the Sacramento County Superior Court, which was denied as a successive, untimely petition on June 16, 2008.[7] On July 30, 2008, Chapman filed in the California Supreme Court the same petition as he had filed in the Sacramento County Superior Court. The California Supreme Court summarily denied that petition without opinion or citation to authority on January 21, 2009. Chapman filed his petition in this court on February 28, 2009.

## II. GROUNDS RAISED/DEFENSES

In his petition, Chapman asserts he was denied the effective assistance counsel at trial because counsel failed to: (1) conduct an adequate pretrial investigation, interview and call

---

[3] *People v. Chapman*, 2007 WL 479953 (Cal. App. February 15, 2007).

[4] The petition is not included in the record transmitted to this court. Consequently, record does not reflect the grounds upon which that petition was based.

[5] In that petition Chapman raised, *inter alia*, an ineffective assistance of trial counsel claim. It was, however, premised upon a different factual basis than is presented in his petition to this court.

[6] In that petition Chapman again raised, *inter alia*, an ineffective assistance of trial counsel claim. It was, however, also premised upon a different factual basis than is presented in his petition to this court.

[7] Citing *In re Clark* (1993) 5 Cal. 4th 750, 774–75 [855 P.2d 729, 745] and *In re Robbins* (1998) 18 Cal. 4th 770, 811–12 [959 P.2d 311, 338–39]. In that petition Chapman again raised, *inter alia*, his ineffective assistance of trial counsel claim. Unlike the earlier petitions, this petition was premised on the same factual basis as is presented in his petition to this court. Although it denied the petition as successive, the superior court also addressed the ineffective assistance of counsel claim on the merits in the context of establishing that the claim did not establish actual innocence to escape the bar under *Robbins*/*Clark*.

witnesses who would have provided exculpatory testimony; and (2) seek admission of evidence of the victim's activities as a prostitute and past "prostitute-client" relationship with Chapman. Respondent asserts no affirmative defense.[8]

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[9] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[10] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[11] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[12] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[13] The Supreme

---

[8] *See* Rules—Section 2254 Cases, Rule 5(b).

[9] 28 U.S.C. § 2254(d); *see* *Williams v. Taylor*, 529 U.S. 362, 404–06 (2000); *see also* *Lockyer v. Andrade*, 538 U.S. 63, 70–75 (2003) (explaining this standard).

[10] *Williams*, 529 U.S. at 412.

[11] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[12] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see* *Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678–79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[13] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks and citations omitted).

Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[14] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[15] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[16] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[17]

In applying this standard, this court reviews the last reasoned decision by the state court,[18] which in this case is the June 16, 2008, decision of the Sacramento County Superior Court denying Chapman's petition for habeas relief. Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[19] This presumption applies to state trial courts and appellate courts alike.[20]

## IV. DISCUSSION

Under *Strickland*, to demonstrate ineffective assistance of counsel, Chapman must show both that his counsel's performance was deficient and that the deficient performance prejudiced

---

[14] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[15] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[16] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[17] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see* *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[18] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[19] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[20] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

his defense.[21] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[22] Chapman must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[23] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[24]

*Strickland* and its progeny do not mandate that this court act as a "Monday morning quarterback" in reviewing tactical decisions.[25] Chapman bears the burden of proving that counsel's trial strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[26] "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[27] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[28] "Because advocacy is an art and not a science, and because the adversary system requires

---

[21] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[22] *Id.*

[23] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[24] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*., 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[25] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[26] *Strickland*, 466 U.S. at 689.

[27] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[28] *Id.* (quoting *Strickland*, 466 U.S. at 689).

deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[29]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[30] The court must then consider those acts or omissions against "prevailing professional norms."[31] Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[32]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[33]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[34]

In support of his petition for habeas relief before this court, Chapman submits the same three affidavits he submitted in support of his "second round" of petitions for habeas relief in the

---

[29] *Strickland*, 466 U.S. at 681.

[30] *Id*. at 690.

[31] *Id*.

[32] *Id*.

[33] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S.Ct.1411, 1420 (2009).

[34] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003)).

California courts. The Sacramento County Superior Court summarized those affidavits as follows:

> In support, [Chapman] attaches a sworn affidavit from Roderick Youngblood, signed April 8, 2008, that he was acquainted with the victim; that on the night he met her in the fall of 2002 she performed oral sex upon him in exchange for a $10 rock of crack cocaine; that his acquaintance Bill Chapman told him that Chapman already knew "this toss up" and that her "head" was "the bomb"; that Youngblood became a regular to the victim, of oral sex from her in exchange for cocaine given to her; that he would see the victim at Jesse's Liquor Store; that twice she traded oral sex for methamphetamine and once for heroin; that at least a half dozen times, he saw the victim's motorcycle parked at Bill Chapman's house; that he once saw the victim perform oral sex on Chapman for a $10 crack cocaine rock; that in May 2005, the public defender's investigator contacted him and he told all he knew about the victim and Chapman, and his own personal history with the victim; that he was told he would be called to testify and received a subpoena but was never interviewed by petitioner's defense counsel or called to testify even though was willing to do so.
>
> [Chapman] also attaches a sworn affidavit from Clarence Smith, signed April 8, 2008, that he was a frequent patron of Jesse's Store; in late 2002 or early 2003, he was with William Chapman at the store when approached by the victim, whom he knew of as having a reputation as a "toss up"; the victim offered to give him a "blow job" for a $10 rock of crack cocaine, which he declined; a few weeks later, he was in a van parked at the store, when the victim approached and offered to give the van's occupants oral sex for a $20 rock of crack cocaine, then in Smith's presence gave oral sex to the other three in the van then smoked rock cocaine and asked if they wanted to go again; after that, whenever he would go to the store, he would often see the victim, who would approach him and ask if he wanted to trade oral sex for $10 of crack cocaine; one spring day in 2003, the victim pulled down her jeans and panties, said for a $10 rock it was all his, tried to take his hand, which he pulled back, then took her own middle finger and put it in her vagina, moving it in and out, then licking it after which Smith declined; when contacted by [Chapman] in 2005, Smith stated he would come to court for [Chapman] and tell all he knew about the victim and her reputation.
>
> [Chapman] also attaches a sworn affidavit from Tyrone Carter, signed April 8, 2008, that he first met the victim mid-November at Jesse's Liquor Store, while with Bill Chapman; the victim at that time offered to trade oral sex for $10 of either methamphetamine or rock cocaine, and Carter had her perform oral sex and gave her a $10 rock of crack cocaine; that Carter would often see the victim around the store and that the victim was known as a "toss up"; he had no less than a dozen sexual encounters with the victim in exchange for $10 of crack cocaine; that Carter had personally seen the victim, twice, give Bill Chapman oral sex in

> exchange for crack cocaine; that Carter had seen the victim at Chapman's residence; that in Spring 2005, when contacted by [Chapman], Carter said he would be willing to talk to [Chapman's] attorney and testify about the victim; that thereafter Carter moved, and was never contacted by [Chapman] or his attorney, but would have testified if called upon to do so.[35]

Tyrone Carter, one of the alleged witnesses counsel failed to interview and call, also stated in his affidavit: "I was never contacted by Mr. Chapman's attorney or Mr. Chapman, as I had moved and he was unable to locate me." Counsel can hardly be faulted for failing to interview and call a witness that cannot be located. Thus, the court is concerned solely with the other two affiants—Smith and Youngblood.

As summarized by the California Court of Appeal on direct appeal and relevant to the petition before this court, the underlying facts are:

> [Chapman] began acting as though D.B. was his "woman," attempting to kiss her and placing his hand on her breasts. She repositioned her body and told him to drive her back to the market. When they arrived at the market, the driver went inside and stole a carton of cigarettes. [Chapman] told D.B. that they would take her home "right now." However, the duo stopped at a house and traded the cigarettes for rock cocaine, which they smoked in the truck. They shared the cocaine with D.B., who smoked one or two times. When they drove onto a familiar street and stopped, D.B. got out of the truck and walked toward a nearby park. However, when she reached the park, [Chapman] came up behind her and grabbed her arm. She yelled and tried to pull away, but he hit her upper arm and face. She fell down and assumed a fetal position. He struck the side of her body several times.
>
> [Chapman] grabbed D.B. by the hair and insisted that she perform oral copulation on him if she "wanted to see [her] kids the next day." She got up onto her knees and [Chapman] put his penis in her mouth. After a few moments he forced her back onto the ground, ordered her to take off her pants and raped her.
>
> Following the rape, D.B. dressed and began walking down the street. [Chapman] acted "carefree," "like everything was fine." He invited her to get

---

[35] Lodged Doc. No. 5, pp. 2–4. The court notes that the summary of the affidavit of Clarence Smith by the Sacramento County Superior Court omits the fact that the affidavit indicates that Chapman was one of the three others in the van.

> more cocaine, but she declined, saying that she could walk home. He put his hand on her arm and led her back to the truck. They drove to a house and he went inside. In his absence, she announced that she was leaving and then fled from the truck. She hid in some bushes and heard the truck pass by a couple of times in an evident effort to locate her. She remained in the bushes until sunrise when she walked to a residence and telephoned 911.
>
> Later that morning, D.B. underwent a sexual assault examination. She told the examiner that the attack occurred at a park, on grass; that her attacker, later identified as [Chapman], had hit her in the face, arm, chest and thigh; and that he grabbed her arm, held her hair, and held her down with the weight of his body. She reported that he had forced her to smoke from his cocaine pipe.
>
> External physical examination of D.B. showed large patches of bruising, tenderness and multiple scratches on her back, and grassy vegetation and debris on her torn clothing. Examination by Woods lamp revealed the presence of semen in a track running down the leg. Examination by colposcope revealed vegetation, including bits of green grass, in the vagina, over the clitoris, and in the rectal area. A toxicology examination found that a byproduct of alcohol and cocaine ingestion was present in D.B.'s blood.[36]

The Sacramento County Superior Court, although rejecting Chapman's second petition on a procedural ground,[37] after noting that the physical evidence was consistent with the victim's version of the crime, also noted:

> Even if the claim were not barred, it would fail, as it is not reasonably probable that a different outcome would have occurred had the evidence been proffered and admitted, in light of the strong physical evidence of nonconsensual sex in the park as described above.[38]

In his response, Respondent points to the fact that, although Chapman did not testify, in the prosecution's case-in-chief, a transcription of an interview of Chapman by the police was

---

[36] *Chapman*, 2007 WL 479953 at *2.

[37] Respondent has not asserted procedural bar as an affirmative defense. *See* Rules—Section 2254 Cases, Rule 5(b). Accordingly, it is deemed waived. *See* *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003) ("Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.").

[38] Lodged Doc. 5, p. 4.

introduced. In that interview, Chapman denied knowing the victim, owning or having access to a black truck (used in the crimes), or ever having sex in a park. Chapman also stated he never used drugs and had not been drunk in years, never picked up prostitutes or had sex with strangers. Chapman did, however, also state that if he, in fact, had sexual intercourse with the victim, it was consensual. Respondent also refers to evidence of letters written and money offered to a potential witness (other than one of the three affiants) to present false testimony. In his Traverse, Chapman does not dispute the Respondent's summation of the interview or that there was evidence of attempts to tamper with witnesses or manufacture evidence (Chapman simply disagrees with the inference Respondent draws from the evidence).

In his Traverse, Chapman focuses on two points: (1) the admissibility of the proffered testimony of Smith and Youngblood; and (2) that Chapman's statement to the police could not be used to impeach either Smith or Youngblood. The first is not at issue and Chapman incorrectly characterizes the second. It is important to keep in mind that the *only evidence before the jury* as to the alleged crime was the testimony of the victim, the statement Chapman made to the police, and the forensic physical evidence. Neither Smith nor Youngblood were present at the time of the alleged crime; consequently, neither could testify as to any of the facts concerning the alleged crime itself.

Respondent does not contend that the testimony was inadmissible. The court agrees with Chapman that, although, the extent to which its impeachment value is questionable, the proffered testimony would have been admissible for the purpose of impeaching the victim. First, the court notes that the fact the victim was a drug addict, using methamphetamine, cocaine, and heroin, not only at the time of the crime, but also before the crime and even at the time of the trial, was

admitted by the victim in both direct and cross-examination. Thus, the proffered testimony of Smith and Youngblood would have been merely corroborative of this evidence, which would not have diminished the victim's credibility.

Second, the victim testified that she did not know Chapman prior to the crime. In his statement to the police, not only did Chapman state that he did not rape the victim, he denied even knowing her. That the proffered testimony of Smith and Youngblood that the victim and Chapman were acquainted and had prior sexual liaisons with Chapman directly contradicted the statements Chapman made to the police is self-evident. Thus, while the proffered testimony of Smith and Youngblood could conceivably have impeached the victim, it would, if believed, have also contradicted Chapman's statements to the police. The failure to use testimony that was effectively a "double-edged sword," cannot be considered as faulty trial strategy.[39] Furthermore, as the Sacramento County Superior Court found, the physical evidence strongly supported the victim's testimony.

It is also conceivable that, as Chapman contends, the testimony of Smith and Youngblood might have bolstered a consensual argument. This argument was not, however, presented at trial. Instead, counsel chose a trial strategy that focused on the victim's drug usage, including the fact she was under influence of drugs and alcohol at the time of the alleged crime, her inability to recall details, and inconsistencies. Under the totality of the circumstances, Chapman has not met his heavy burden of establishing his counsel was ineffective. He has provided no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy. He

---

[39] *See* *Pace v. McNeil*, 556 F.3d 1211, 1224–25 (11th Cir. 2009); *Boyle v. McKune*, 544 F.3d 1132, 1138–39 (10th Cir. 2008).

presented no alternate attorney's determination challenging counsel's decision to pursue the defense of attacking the victim's vague recollection. He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[40] Furthermore, this court cannot say that, assuming without deciding that Smith and Youngblood would actually have testified,[41] there is any reasonable probability that the outcome would have differed. As the Respondent surmises, it is more likely that the jury would have viewed the testimony of Smith and Youngblood as contrived or perjurious.

      Based upon the record before it, this court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this court find that the state court unreasonably applied the correct legal principle to the facts of Chapman's case within the scope of *Andrade-Williams-Schriro*. Chapman has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.

---

[40] *Strickland*, 466 U.S. at 688.

[41] An assumption that, given that the proffered testimony would have tended to incriminate them, is questionable. Absent a grant of immunity, which it is highly unlikely the prosecution would have agreed to, like Daryl Thomas the driver of the vehicle who was present at the time of the alleged crime, when called as witness by the defense, both would likely have "taken the Fifth" on the advice of counsel.

[42] 28 U.S.C. § 2254(d).

V. CONCLUSION AND ORDER

Chapman is not entitled to relief under the ground raised in the petition. Accordingly,

**IT IS ORDERED** that the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a Certificate of Appealability.[43] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[44]

The Clerk of the Court will please enter final judgment accordingly.

Dated: May 10, 2010.

/s/ John W. Sedwick
United States District Judge

[43] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[44] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.